Good morning, your honors. I come before you on a case that is gravely concerning because the factual basis in my client, and I'm Jody Calaway-Cole representing Mr. Traydon Smith appellant. So in Mr. Smith's case, the factual basis that the 922G felon in possession charge that he pleaded to absolutely does not support that kind of conviction. And if the government proved every fact beyond a reasonable doubt in the factual basis, they would not be able to prove felon in possession because it requires immediate control of the gun, not touching it. And that is all the record shows is that Mr. Smith merely touched a gun in possession of his friend, Mr. Collins. As I understand it, as I understand it, Ms. Cole, and of course, Ms. Embry can clarify later, but as I understand it, the government has argued only for actual possession rather than constructive, even though there's a lot of briefing about constructive possession. But why don't you clear that up for us? Yes, your honor. In account to the count that Mr. Smith pleaded to, the elements required for actual possession for actual possession requires immediate direct physical control of the firearm. There is no indication that Mr. Smith ever had immediate direct physical control of the firearm. There's only an admission that he once touched a firearm in possession of his friend, Mr. Collins. Can you clarify a little bit? How did they get from Collins to Smith? Yes, your honor. To understand that, understanding the timeline is important, and I will be filing a motion to expand the record to include Mr. Collins' Pacer case and some documents, including the superseding indictment that he pleaded to. On April 6th, the date in the affidavit on the record, there is a Detective Cedillo confiscated three guns from Mr. Collins, and in these guns, there is a Smith & Wesson pistol. On May 13th, Mr. Smith is interviewed by the detectives about the three guns confiscated from Mr. Collins after being shown the pictures of the gun. I'm aware of that, but what I'm wondering is why did they interview him? Your honor, that's a good question. The record does not indicate any kind of time. I didn't miss that. Then the other thing I'm trying to understand is why does the indictment say April 29 when it was confiscated April 6th? Exactly, your honor. It's a factual impossibility. If they wanted to correctly allege this indictment, they could have alleged, as they did in Mr. Collins' case, that Mr. Smith touched the weapon on or about April 6th, and at least it would have some kind of basis, but the fact is these weapons were off of the streets completely and were unavailable for touching by my client, Mr. Smith, on April 29, 2019, the date alleged in his indictment. Okay, so then explain to me why would he confess to touching when he didn't possess? I realize that this touching versus possession is a key issue in this case, but it seems, I mean, it has a little bit of a law school exam quality to it, and I'm wondering how it got there. Your honor, when Mr. Smith was being interviewed by the Midland police, they used a coercive tactic that I'm not a big fan of, but that is legal, and what they did is they showed him pictures of these three weapons and asked him why his fingerprints would be on all three weapons. There is no evidence that his fingerprints were ever on any of those weapons. However, he provided an admission that he thought he touched a Smith and Wesson at his friend's Mr. Collins' house once in the past, and that is a very tenuous tie that they have for any kind of actual possession in count two. It's a problem, and another important issue is that the government fails to prove by preponderance of the evidence that Mr. Smith ever had constructive possession of the two rifles alleged in count one, which are used to enhance his sentence based on using 2K2B1 relevant conduct. Just another minute on the guilt versus innocence issue. What would it have taken, in your view, for him to have had actual possession of Collins' gun? What would he have needed to confess to, besides the word possession, kind of what facts would he need to confess? That's a very good question, your honor, and when I was researching the case law, there was some examination of the knowledgeman's requirement, but essentially, the fact that needed to exist was, did Mr. Smith hold the gun in his hand, or did he not? That is the fact, and there is no evidence on the record supporting that he ever had any kind of control over that gun. So you're saying the gun's sitting on the table, if he just taps on it, his fingerprint could be there, but he didn't possess, whereas if he picks it up and looks at it, he did possess? Yes, your honor. Another thing that could have happened is his friend, Mr. Collins, was showing him the weapon, holding it in his hands, and Mr. Smith could have touched that weapon, but there is no evidence that he ever had any direct control of that weapon. Well, and wouldn't the fingerprints, if they did have them, which I understand they don't, or at least haven't given us, wouldn't they show whether you're, like, holding the gun, or whether there's just one little, because if there's just one little fingerprint on the gun, it's awfully hard to hold. Exactly, your honor, and there is no evidence that there was ever fingerprints on that weapon. Nothing to tie him, forensically, to holding that weapon at any point, and he never admits doing it. He is actually innocent of the offense to which he pleaded guilty. It's highly unusual. I've never seen that, and the other problem is that his sentence was enhanced by a very tenuous inference that when he was caught burglarizing cars with another man that apparently some rifles may have been moved within one of the cars that was burglarized, but there is no evidence that Mr. Smith ever touched those guns, or that he even touched the car that was burglarized. Witnesses state there are two burglars in the area, and the second man, Mr. Glover, was found hiding in a tree. It is at the most 50-50. There are two men that were in the area that could have touched that car, much less touched the weapons within that car. That was an inappropriate, outrageous enhancement using a very weak constructive... I could hear blood and kind of evidence that he crashed into the car, and again, I'm not talking about maybe supporting a conviction, but we're just talking about preponderance. Your honor, there's no evidence on the record that would not also be attributed to another man in the area engaging in the exact same activity, and in fact, the fact that the man had scrambled up into a tree alludes to the fact that he probably did have cuts on his hands, and there was no forensic evidence tying any blood found in the car where the rifles were found that connects my client to that DNA or excludes Mr. Glover from that DNA. It is 50-50. It is not by a preponderance of an evidence. Can you point us to any case law that indicates for actual possession that you even have to have touched the weapon? Aren't there circumstances in which you could have actual possession without touching or any other kind of contact? Your honor, in my own research, I never found one case that suggested anything like touching a firearm. There was no case law that supported that touching would be sufficient to satisfy the possession element of a 922G. I never came across any case law. All of the case law had some kind of touching. You have these cases where you own the house and the gun's in the house. They don't have your fingerprints on the gun, but you own the house. You're the only one who lives there. It's in there. I'm not sure that's the issue here, though, because there's no indication it was in his house. It was in his friend's house, right? Precisely, your honor. That would have been a the government used an actual possession theory on the count Mr. Smith pleaded to, and there is no relation between the two counts that would allow any kind of enhancement under 2K2B1 where they enhance the sentence based on three guns being used in a single offense. That is factually inaccurate. There is no tie between the two offenses alleged in the two separate indictments that would allow or justify any kind of enhancement that they were a single offense or a pattern in any way. And I did look at the government's analysis about the USSG Note enhancement requirements or to conflate those two offenses. There had to be a common scheme or plan, or it had to be in the same course of conduct. And there is no evidence that would support any kind of analysis that would allow for this kind of enhancement. When I want another actual possession that you may not have touched, if someone put it in your purse and you're carrying your purse on your shoulder, I guess that'd be an actual possession as opposed to a constructive. I don't know. Well, your honor, that's a really good point, but I think that that's more of a constructive. Yeah, I don't know if I'm carrying my purse on my shoulder. I think I'm actually possessing my purse. I'm not talking about somebody hit a gun and I didn't know I'm, you know, whatever. Yes, your honor. It's for the record. I don't carry a gun in my purse, so don't be afraid of it. I'm not, your honor, but I thank you for that assurance. This there was no common scheme or plan between the two offenses alleged in the separate offense indictments. There were no common victims, no common accomplices. The men that were involved in both separate indictments did not. There's no evidence that they knew each other at all or had any relation. And the two allegations in the two separate offenses happened months apart. And there is just no nothing that would support a preponderance of an evidence finding that would justify an enhancement of three guns used in a single offense. That is improper. But the most problematic aspect is that Mr. Smith pleaded to an offense that he is not guilty of. That's a real problem. Anything else on your opening argument was code. Well, your honor, I just want to point out that the two indictments have no tie that would justify a same course of conduct either. There was no actual or constructive possession shown in Mr. Smith's case on either indictment. And the fact that he pleaded guilty to an offense he was innocent of strikes me as a Kafka-esque situation where he's just agreeing to something and going along with everything without having any idea that he was completely innocent of the offense to which pleaded and that his lawyer allowed him to do that. It's a travesty. It's a gravely problematic situation. I've never seen anything like this case. It's highly unusual. All right. Thank you, Ms. Cole. You save time for a bottle. Ms. Embry. Thank you, Your Honor. Margaret Embry for the United States. And regarding the actual or constructive possession, I did pretty much stick with the actual possession because in this case, there was the fingerprint on the gun. Excuse me. It was the fingerprint on the gun, as well as the defendant's admission that he had touched the gun. And where is there evidence of the fingerprint? Because to me, a question, if I say, don't you know that you murdered John? That doesn't prove that I have evidence that you murdered John. I'm asking you, right? I mean, how is a question proof of something? Particularly when a police officer asks it because they ask questions that are not truthful to gain confessions or that they don't know the answer to, I guess I should say. Well, I don't know the background of whether or not there were fingerprints on all three of the guns, but that's information that's contained in the factual basis. And there's information also in the PSR and the criminal complaint about it. Is there anything other than a question by the police officer of why are your fingerprints on these guns? Which we know could mean that they were on there, or it could mean that the police officer is just asking that to get, that the police officer doesn't know and is asking that to get a confession. Again, I'm not accusing the police officer of anything improper. Ms. Cole conceded that they can do it. I'm just asking how that proves that there were fingerprints. There are no actual fingerprints admitted into the record. So I can't specifically answer that, but I can tell you that on page 146 of the record, it talks about appellant's fingerprints were on all three weapons. Now it's true that it is a question the police officer asked it, but it's contained in the factual basis and it's contained in the criminal complaint, which of course is a sworn document. And also there's mention of it in the PSR. So the court was entitled to rely on that. No one tried to rebut it or offer evidence that there weren't fingerprints. I mean, he says, I don't know about the other two guns, but I know I touched one. So to me, that suggests that only one third of the so-called fingerprints were there. And then that he got there by touching. So I don't, again, I mean, the concern I have is all the time police officers say, why would your DNA be in Jane's apartment? Okay. When they don't have DNA in the apartment. Okay. So how does that prove that your DNA is in Jane's apartment? Well, by the same token, not all defendants tell the truth about the extent of their criminal activity. So you're, you're right. The fingerprints are not admitted into the record. But just the mere fact that he was touching those doesn't necessarily mean that he didn't. So, you know, all I can say is that in the record, it, it supports that finding by the district court that his fingerprints were on weapons. Do you have any case law that supports the notion that a question by a police officer that is not answered? Yes. By the defendant is itself sufficient evidence to support a factual basis. Let's assume argument of touching isn't enough, but that's what he admitted to. No, I, I don't have any evidence that a question, a mere question is sufficient. However, as I said, in the record on page 146, it does talk about fingerprints on all three of the weapons. And also he admitted to touching one. Um, but it is included in the factual basis and it is included in the criminal complaint, the sworn document. And it's also mentioned in the PSR, uh, not specifically as it is in the factual base. So let's say we had a video of his day at Collins house and we saw him tap his finger on the gun and that's all we saw. And that's all the evidence we had in the case. Would that be to support a conviction for felony possession? Well, for actual, for actual possession, the government has to prove that he had direct physical control over the weapon. Um, so I would think that that would of course be a question for the court to determine, but I don't think that touching a weapon is, um, is direct physical control, um, as the case law has held. Um, but for constructive possession, yeah, the government has to prove that he had dominion or control either over the firearm or the premises where the firearm was found. And, um, it's clear that he wasn't, um, in the premises that it wasn't his premises. It was apparently the front. Um, so that's why I focused more on the actual possession and the direct control. Do you know why they were asking him in May about the guns they collected in April at Collins house? Why they're asking Smith? There was something in the record that I found your honor, to, to help me understand that. Do you know why the date says April 29 when they confiscated the guns? Um, I assume that it might have been a typo, but on or about, um, is sufficient to cover that. Um, as far as the enhancement for the three guns under 2K21B1A, I believe it is, um, he gets the enhancement for having three or three to seven guns. And the court can consider circumstantial evidence, um, to prove, to, to establish that there was a preponderance of the evidence to support that enhancement. And you can also consider the circumstantial evidence. And the evidence was that night, um, when he broke in and he fled when the police showed up, the police caught him and the other guy too. And he had in his pocket, a glass cutter and the glass of the, uh, the truck that I think it was a GMC, uh, had been broken into. He had, uh, cuts on his hands and was bleeding. And there was blood in the car and in the truck. Um, the owner testified that the guns had been shoved under the seat. Um, and, but when, after the car had been broken into were propped up against the console of the truck. So obviously he had exercised control over those weapons by moving them. And circumstantially, you can say that it was Mr. Smith and not the other guy because Mr. Smith's hands were bleeding. He had the glass cutter and the seatbelt cutter. Um, I think he also had a black ski mask and gloves and for some reason, socks over his shoes. Um, and he admitted to being the leader of a gang that burglarized vehicles. Um, the, I think he called it the 100 something. I can't recall exactly. Um, and that's also contained in the, in, in the PSR. Um, so I think the evidence is certainly sufficient, more than sufficient to show that the enhancement was proper and that the court properly assessed that enhancement. Anything else? Miss Ember. I don't see anything in my notes. Did the court have anything further? All right, Miss Cole, you say time for a bottle. Thank you, Your Honor. What's in what's important to note is that there is no forensic evidence of a fingerprint of any sort in this record. And when Miss Embry cited to the affidavit, it says when Smith was confronted again about the three firearms and why his fingerprints would be on them, Smith stated, I don't remember touching the rest of those guns, but I know for a fact I touched the 38 that that again is a restatement of a question that is not evidence and that is improper to infer that that is a factual tie of fingerprints with my client to any weapons. And I do want to point out, Your Honor, for time. First of all, Mr Smith is factually innocent of this offense. Regarding the burglary, the government must prove by preponderance of the evidence constructive possession of the two rifles that were moved around in one car. A close examination of the record indicates that one witness saw two men in the area doing guns moved in his car, said the word burglars, not burglar. There, the second man was found climbing a tree, and he was presumably dressed exactly the same with having the same materials as my client, Mr Smith. It can only be reasonably inferred 50 50 that Mr Smith may have even burglarized that specific car or if he burglarized that car with Mr Glover that he it is 50 50 chance that he touched it. That is not a preponderance of the evidence. But why isn't that potentially constructive when you've got to a burglar couple, if you will, going and doing something together, then there can be responsibility for what the other does. Why isn't that enough? The 50 50 enough to get you to 50.1? Well, Your Honor, that because it is so tenuous, the theory and I do want to read even from the government's theory to support this conviction and enhancement was he admitted to touching one. The others were messed with. You know, facts are what they are. It's a unique case because he didn't possess him in the sense that he took them out and held them in his hand. The government's allegation is that he exercised dominion and control over them and didn't get to steal them like he wanted to. Well, I mean, yeah, he was trying to. And so well, you know, you're saying it's not possession if you don't succeed in stealing. And, Your Honor, it's so tenuous. We don't even know that one person didn't try to grab a backpack. And when he saw there were guns involved, didn't drop it. There's no evidence that those guns were touched in any way by either party. So actually, it's less than 50 50, Your Honor. And to be clear, it's perfectly fine if you can lawfully use a gun to carry it in your purse. It's here with Mr. He can't lawfully possess a gun. Exactly. Yes, Your Honor. It's a step. He has the status of being a felon. And under so I think the fact that he is innocent of the offense to which he pleaded is enough to earnestly request that this conviction be vacated. I do want to point out when I was row 124 and 1 23 that Mr. Smith's defense attorney accidentally argued that Mr. Smith Smith, a different enhancement was based on a aggravated sexual assault by a deadly weapon, which was a complete error. There is no kind of sexual assault. That kind of comment. He was making rulings on the sentencing, and the cumulative effect of all these errors requires, Your Honor, please to vacate this this conviction for Mr. Smith. All right. Thank you, Miss Cole. Your case is under submission. Thank you, Your Honor. Your honors.